**Suthakaran VELAUTHAN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–71942, A78–015–973.

United States Court of Appeals, Ninth Circuit.

Submitted July 30, 2004.*

Decided Aug. 13, 2004.

Markandu S. Vigneswaran, Law Offices of Markandu S. Vigneswaran, Hacienda Heights, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, CAC–District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, San Francisco, CA, John C. Cunningham, Nancy E. Friedman, Ann Carroll Varnon, Washington, DC, for Respondent.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before B. FLETCHER, LEAVY, and BERZON, Circuit Judges.

### MEMORANDUM**

Suthakaran Velauthan, a native and citizen of Sri Lanka, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal. "Where, as here, the BIA adopts the IJ's decision while adding its own reasons, we review both decisions." *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir.2000). We grant the petition for review and remand for further proceedings.

■ The BIA erred in adopting the IJ's conclusion that Velauthan did not demonstrate a well-founded fear of persecution by the LTTE on account of imputed political opinion because his dispute with them was grounded in personal revenge. *See Lim v. INS*, 224 F.3d 929, 934 (9th Cir. 2000) ("the threats to Lim are accurately viewed as 'revenge plus'—revenge partly motivated by (and thus on account of) imputed adverse political opinion"). The LTTE visited Velauthan's home in part to stop his father's translation services for the Sri Lankan army. The resulting verbal dispute included an expression of political opinion by Velauthan's father—"[the Tigers] all must get destroyed, then only we could live peacefully." After the altercation turned physical, there were threats to Velauthan that were repeated after Velauthan's departure from Sri Lanka. These threats ("we will forgive an enemy, but not a traitor") were couched in language that indicates not mere personal revenge, but imputation of a political opinion to Velauthan. Taking all the evidence together, the record compels a finding that "it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground." *Borja v. INS*, 175 F.3d 732, 736 (9th Cir.1999) (en banc) (quoting *In re T–M–B*, 21 I. & N. Dec. 775 (BIA 1997) (en banc)). We therefore remand for the agency to reassess whether Velauthan has a well-founded fear of persecution by the LTTE. *See* 8 C.F.R. § 208.13(b)(2).

■ That Velauthan suffered past persecution by the Sri Lankan army on account of his Tamil ethnicity is undisputed. Defending the BIA's finding of changed country conditions, the government contends that we should not take judicial notice of the most current information concerning the Sri Lankan peace process.

The BIA's finding of changed country conditions was based on a different State Department report from that relied upon by the IJ. By taking administrative notice of the 2002 report without informing Velauthan and providing him with an opportunity to respond, the BIA acted in contravention of due process. *See Gomez–Vigil v. INS*, 990 F.2d 1111, 1114 (9th Cir.1993) (per curiam) (applicants must receive warning of administrative notice taken by the BIA and "an opportunity to contest or rebut by further evidence the facts of which administrative notice was taken").

Further, while the 2002 report is optimistic about the course of peace negotiations, it does not indicate that the dispute between the Sri Lankan government and the LTTE was finally settled.[1] With an

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We note that even the relatively optimistic

opportunity to contest the report's predictions, Velauthan might have been able to demonstrate that his well-founded fear of persecution was not rebutted by a preponderance of the evidence and thereby establish his eligibility for asylum. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir.2004) ("The burden is on the INS to demonstrate that conditions have changed."); *cf. Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001) ("[E]ven a ten percent chance of persecution may establish a well-founded fear.").

Moreover, the 2003 State Department report, published after the BIA's ruling, chronicles the suspension of the peace negotiations that had provided the basis for that decision. In *Gafoor v. INS*, 231 F.3d 645 (9th Cir.2000), we reviewed a changed country conditions determination and noted that "[o]rdinarily, we would accept the BIA's finding of changed country conditions as long as it was not undermined by evidence in the record. But recent events have rendered the State Department's ... report hopelessly out of date...." *Id.* at 654. Similarly, the important turn of events in Sri Lanka subsequent to the publication of the 2002 report relied upon by the BIA permits judicial notice of the 2003 report. *Id.* at 655–56. As in *Gafoor*, we therefore remand for consideration of "whether recent events in [Sri Lanka] undermine the finding that [Velauthan's] well-founded fear of persecution is rebutted by changed country conditions." *Id.* at 655; *see also Lopez v. Ashcroft*, 366 F.3d 799, 805 (9th Cir.2004) (requiring this determination to be individualized); *cf. INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). We also remand Velauthan's withholding claim for

2002 report documented continuing politically-motivated violence by the LTTE.

further consideration in light of this disposition.

**PETITION FOR REVIEW GRANTED; REMANDED.**